******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# CHIEF DISCIPLINARY COUNSEL *v.* HAROLD H. BURBANK II
## (AC 41805)

Prescott, Bright and Sheldon, Js.

*Syllabus*

The respondent attorney appealed to this court from the judgment of the trial court suspending him from the practice of law for one year. The respondent, who was admitted to practice law in both Maine and Connecticut, had been involved in civil litigation in Maine involving waterfront property that he owned in joint tenancy with several members of his family. After the trial court rendered judgment in that action, the respondent appealed as a self-represented party to the Maine Supreme Judicial Court, which affirmed the judgment of the Maine Superior Court and concluded that the respondent had engaged in misconduct while prosecuting the appeal. Accordingly, sanctions were imposed against the respondent in the form of an award of attorney's fees and costs. Subsequently, Maine's Board of Overseers of the Bar suspended the respondent from practicing law in Maine for one year on the ground that he had violated Maine's Rules of Professional Conduct. Thereafter, in the present case, the petitioner, the Chief Disciplinary Counsel, filed an application seeking commensurate disciplinary action against the respondent pursuant to the applicable rule of practice (§ 2-39). Subsequently, the trial court found that commensurate discipline was appropriate with respect to the respondent's Connecticut law license and ordered the respondent suspended from the practice of law in Connecticut for one year. On appeal, the respondent claimed, inter alia, that because he was a self-represented party at the time he engaged in the alleged misconduct that led to his suspension in Maine, the disciplinary action against his law license in Maine, and by extension, in Connecticut, violated his right as a citizen to petition the government for a redress of grievances as protected by the first amendment to the federal constitution and violated his rights to due process and equal protection under the fourteenth amendment to the federal constitution. *Held:*

1. The trial court did not err in determining that the respondent failed to demonstrate by clear and convincing evidence that the reciprocal suspension of his law license was a violation of his federal constitutional rights to petition the government without the fear of reprisal; the respondent failed to cite to any legal authority in which a court has ruled that the enforcement of attorney disciplinary rules on an attorney engaging in self-representation before a court implicates that attorney's right to petition as protected by the first amendment, nor did he cite to any authority for the proposition that an attorney acting as a self-represented litigant should be held to a different standard of professional conduct than that applied to an attorney acting on behalf of a client, and the respondent's attempt to differentiate for disciplinary and constitutional purposes between an attorney's actions taken on behalf of a client and actions taken in representing himself in his role as a citizen was unavailing, as this court has recognized that an attorney, as an officer of the court, must always conduct himself or herself in accordance with the Rules of Professional Conduct, the respondent had the same professional obligation to the court when representing himself as when representing a client, and the fact that he appeared in a self-represented capacity did not lesson his duty to comply with those rules.

2. The respondent could not prevail on his claim that the trial court's finding that he failed to demonstrate by clear and convincing evidence a cognizable defense to the Maine disciplinary proceedings was clearly erroneous; although the failure to receive due process in a disciplinary proceeding in another jurisdiction would be a proper defense to the imposition of reciprocal discipline in Connecticut, there was nothing in the record to demonstrate that the respondent raised a colorable claim that he was denied due process in the Maine disciplinary proceedings, nor did he make any credible claim that he lacked sufficient notice or an opportunity to be heard, the respondent's arguments and reasoning, both in

his pleadings before the trial court and to this court on appeal, were circuitous, repetitious, and lacked a cogent discussion that was logically and legally tethered to the issue under consideration, which made it difficult to evaluate whether his claim was properly raised and preserved for appellate review, and even if the claim were deemed to be preserved, much of the veritable laundry list of constitutional arguments and alleged violations of rights, including fleeting references to the ninth amendment, the supremacy clause, the commerce clause, and the full faith and credit clause of the United States constitution, consisted of no more than generalized statements of legal propositions, devoid of any cogent analysis or application of the facts to any of the asserted constitutional doctrines relative to the subject matter at hand, namely, the reciprocal enforcement of rules governing attorney professional misconduct.

Argued October 17, 2019—officially released January 21, 2020

*Procedural History*

Presentment by the petitioner for alleged professional misconduct by the respondent, brought to the Superior Court in the judicial district of Hartford and tried to the court, *Sheridan, J.*; judgment suspending the respondent from the practice of law for twelve months, from which the respondent appealed to this court. *Affirmed.*

*Harold H. Burbank II*, self-represented, the appellant (respondent).

*Brian B. Staines*, chief disciplinary counsel, for the appellee (petitioner).

*Opinion*

PRESCOTT, J. The present appeal arises out of a reciprocal disciplinary proceeding commenced pursuant to Practice Book § 2-39 by the petitioner, the Chief Disciplinary Counsel, against the respondent, Harold H. Burbank II, who had been suspended from the practice of law in Maine for one year due to his actions as a self-represented appellant before the Supreme Judicial Court of Maine. The respondent appeals from the judgment of the trial court, which found that commensurate discipline was appropriate with respect to the respondent's Connecticut law license and ordered the respondent suspended from the practice of law in Connecticut for one year.[1]

The respondent, relying principally on the fact that he was not acting on behalf of a client but as a self-represented party at the time he engaged in the misconduct that led to his suspension in Maine, claims on appeal that the disciplinary action against his law license in Maine and, by extension, in Connecticut, (1) violated his right as a citizen to petition the government for a redress of grievances as protected by the first amendment of the United States constitution, and (2) violated his rights to due process and equal protection of law under the fourteenth amendment to the United States constitution.[2] We disagree and, accordingly, affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history.[3] The respondent is an attorney admitted to the practice of law in Connecticut and Maine. The genesis of the underlying grievance proceeding was civil litigation before the Superior Court in Maine concerning waterfront property in Northport, Maine, that the respondent owned in joint tenancy with his father, two siblings, and ten other members of his family (Burbank property).[4] Several neighboring property owners (neighbors) commenced the litigation against the owners of the Burbank property seeking, inter alia, a prescriptive easement over the Burbank property, a declaratory judgment, and damages for conversion and trespass. At trial, the respondent represented himself, his father, and his siblings (Burbank defendants). The remaining co-owners of the Burbank property (co-owners) sought to settle the dispute with the neighbors and later filed a cross claim against the Burbank defendants seeking a partition by sale of the Burbank property. The trial court, after a bench trial, rendered judgment in favor of the neighbors on their claims for a prescriptive easement, a declaratory judgment, and conversion, and also found for the ten co-owners on their cross claim and ordered a partition by sale. The court found against the neighbors on their trespass count.

The respondent was the only party who appealed

from the trial court's decision. Although the appeal was filed initially by another attorney, she later withdrew her appearance, and the respondent continued prosecuting the appeal as a self-represented party. The Maine Supreme Judicial Court issued an opinion in which it affirmed the judgment of the Maine Superior Court and, more importantly for the issues now before this court, concluded that the respondent had engaged in misconduct while prosecuting the appeal. The court determined that this misconduct warranted the imposition of sanctions against the respondent in the form of an award of attorney's fees and costs.

The Maine Supreme Judicial Court summarized its decision as follows: "The trial court issued a thorough, carefully considered judgment, supported by extensive findings and conclusions and accurate legal analysis. Because the court did not err when it granted a prescriptive easement or ordered partition by sale of the property, and because the remainder of [the respondent's] arguments are either improperly raised, meritless, or both, we affirm the judgment and, on separate motions of the [n]eighbors and the [c]o-owners, we order sanctions against [the respondent] pursuant to [Me. R. App. P. 13 (f)]."[5] *Lincoln* v. *Burbank*, 147 A.3d 1165, 1169 (Me. 2016), cert. denied, U.S. , 137 S. Ct. 1338, 197 L. Ed. 2d 520 (2017).

In discussing its decision to sanction the respondent, an action that the court indicated it reserved for only "egregious cases"; (internal quotation marks omitted) id., 1176; the Maine Supreme Judicial Court made the following findings regarding what the court viewed as the respondent's "repeated misconduct in prosecuting [the] appeal." Id., 1179. "[The respondent] initiated the handling of this appeal with the same cavalier attitude that he demonstrated in his handling of the steps at issue in this case. He did not communicate with the appellees in order to reach some agreement on the contents of the [a]ppendix; he attempted to include in the [a]ppendix documents that were not part of the record below; he failed to respond to a direct order requiring him to explain how he, as the appellant, could purport to represent some of the appellees; he filed a brief 'bound' with twine; and as noted above, he failed to comply with [Maine's rules of appellate procedure by] filing a second reply brief without permission.

"[The respondent's] brief on appeal demonstrated this same contumacious attitude, a fact he apparently recognized, as, in his request for oral argument, Burbank asserted that some of his filings before us 'were not properly edited before being submitted to the court,' and argued for a chance to 'correct and clarify these errors, so the court may be certain that [the a]ppellant certainly did not intend them or to offend the dignity and authority of the court.'

"[The respondent]'s request for oral argument

included statements that further highlight the impropriety of his actions in this appeal. Beyond conceding the impropriety of some statements in his several appellate briefs . . . he proposed to represent the views of the other Burbank [d]efendants [who had] declined to have [the respondent] represent them on appeal and are not participating in this appeal. [The respondent], as a member of the Maine bar, must understand that he cannot represent on appeal persons who have declined to appeal and declined to have him represent them on appeal[6]. . . .

"In his request for oral argument, [the respondent] also proposed to testify or otherwise present facts to clarify [trial testimony that] the trial court found, in part, to be contradictory and not credible. There can be no question that presenting new facts or other evidence by brief or oral argument is not proper appellate advocacy. . . . [The respondent's] several briefs include a number of statements about facts that do not appear in the trial court record and thus are improperly offered for consideration on appeal. . . . [The respondent] also filed a "Supplement of Legal Authorities" that includes evidentiary materials and fact statements not in the trial court record, including an advocacy document that [the respondent] had filed with a private mediator that, as a document apparently used in settlement efforts, could not have been used at trial pursuant to [Maine's Rules of Evidence §] 408 (b), and, consequently, was improperly filed with the appeal documents.

"Beyond his purported representation of people who do not wish to be represented by him, his failure to comply with the logistical rules, his attempt to present new evidence at an appellate proceeding, and his contentious and unprofessional tone, [the respondent] makes several arguments in support of his appeal that are frivolous and devoid of legal authority to support them.

"Asserting propositions of law not supported by statute or precedent, absent a good faith effort to evolve the law, is an indication of frivolousness that can subject a party to sanctions. . . .

\* \* \*

"Throughout the various stages of this appeal, in his briefs, his Supplement of Legal Authorities, his request for oral argument, and his responses to opposing parties' motions, [the respondent] has consistently disregarded standards of law and practice that govern appellate review. He has asserted legal arguments that are frivolous and baseless, and, contrary to governing precedent, he has sought to have us consider and decide the appeal on new facts and new evidence that were not part of the trial court record on appeal. [The respondent]'s efforts have been disrespectful to the proper

role of the trial court, unfair to and expensive for the other parties, and contrary to Maine appellate law. [The respondent]'s frivolous and baseless actions are egregious conduct that has confused the issues on appeal, delayed final resolution of this matter, and significantly driven up the costs to other parties. Although the actions taken by [the respondent] would be concerning if he were a litigant unschooled in law, we note that [the respondent] is not only an attorney, but an attorney who is licensed to practice in Maine. He is, therefore, presumed to be familiar with our case law, our statutes, and our [r]ules; his actions demonstrate either a complete lack of understanding or an intentional flouting of those guides.

\* \* \*

"As with other rules, the rules regarding sanctions and determinations that an appeal is frivolous are applied equally to represented and unrepresented parties. . . . Although he purports to speak for or represent the interests of parties who are not participating in this appeal, and although he is an attorney, we consider [the respondent] to be unrepresented for purpose of our consideration of sanctions. However, attorneys who represent themselves on appeal are assumed to be aware of court rules and their ethical obligations in prosecuting their own appeals." (Citations omitted; footnote added.) *Lincoln* v. *Burbank*, supra, 147 A.3d 1176-79. The Maine Supreme Judicial Court concluded on the basis of what it described as "repeated misconduct in prosecuting this appeal" that the respondent should be sanctioned, and it ordered the respondent to pay each of the plaintiff neighbors and nonBurbank defendant co-owners of the property $5,000 toward their attorney fees incurred to defend the appeal as well as treble costs. Id.

On the basis of this conduct and following a review of those findings by a Maine grievance commission panel, Maine's Board of Overseers of the Bar (board) filed an information in accordance with Rule 13 of Maine's Disciplinary Rules of Procedure in which it alleged that the respondent had violated multiple provisions of Maine's Rules of Professional Conduct. In accordance with Maine procedural rules, on October 18, 2017, Justice Robert Clifford, an active retired justice of the Maine Supreme Judicial Court, conducted a de novo testimonial hearing. Justice Clifford, on January 25, 2018, filed a memorandum of decision suspending the respondent from practicing law in Maine for a period of twelve months. See *Board of Overseers of the Bar* v. *Burbank*, BAR-17-12 (January 29, 2018) (Clifford, J.). Justice Clifford found on the basis of the Maine Supreme Judicial Court's factual findings and conclusions in *Lincoln* v. *Burbank*, supra, 147 A.3d 1165, and on the additional evidence presented at the testimonial hearing, that the board had proven that the respondent

had violated Rules 1.1, 1.3, 3.1, 3.4 and 8.4 of Maine's Rules of Professional Conduct, which, like Connecticut's rules, adopt with modifications the American Bar Association's Model Rules of Professional Conduct.[7] See 1 & 2 G. Hazard, W. Hodes & P. Jarvis, The Law of Lawyering, (4th Ed., 2019), § 1.15 & Appendix B.

In his opinion, Justice Clifford also observed that the respondent's actions continued "to be problematic" during the disciplinary proceedings. *Board of Overseers of the Bar* v. *Burbank*, supra, BAR-17-12. Specifically, the court found the following: "In his answer to the within information in this case, [the respondent] has admitted to making errors in applying and interpreting the applicable rules of court, but has asserted that some rules were not published, and thus he could not interpret or apply them; some rules were ambiguous; and his failure to file timely responses was due to his suffering a stroke. [The respondent] has failed to pay the $10,000 in sanctions imposed on him by the [Maine Supreme Judicial Court], nor has he fully paid the $20,000 judgment against him imposed by the [Maine Superior Court] in the underlying litigation, and has since filed a Chapter 7 bankruptcy action in the Bankruptcy Court in Connecticut. [The respondent] also did not properly offer all the exhibits at this bar discipline hearing that he made reference to in his post hearing submission. In short, he does not appear to have a good grasp of the procedural rules of litigation."[8]

In determining the appropriate sanction to impose for the respondent's violations of the identified rules of professional conduct, Justice Clifford considered both aggravating and mitigating factors. Specifically, the court stated: "There are *many* aggravating factors in this case. The misconduct at issue is very serious. [The respondent's] conduct in the underlying litigation, and especially in the appeal in *Lincoln* [v. *Burbank*, supra, 147 A.3d 1165], has caused substantial injury to the parties involved in the litigation as well as a waste of judicial resources. Although this court does not find that all of [the respondent's] misconduct was deliberate, as a practicing attorney, he certainly should have known that his conduct was far afield from the standards expected of a reasonably competent attorney, and that his actions constituted misconduct.

"There are *some* mitigating factors that the court feels compelled to consider. [The respondent] has no prior disciplinary record in Maine, he was under great stress due to his father's poor health, and he himself has suffered from a stroke and is not in good health. There is also evidence that [the respondent] provided competent legal representation in Maine in the past, namely, in the effort by Ralph Nader to be placed on the Maine ballot as a presidential candidate in the early 2000s.

"The main purpose of imposing a sanction in these disciplinary proceedings is the protection of the public.

The sanction to be imposed must be significant because of the serious misconduct that is involved here, and must require that [the respondent] file a petition for reinstatement in order for him to be reinstated as an attorney in good standing." (Emphasis in original.) Id. Having considered both the aggravating and mitigating factors, Justice Clifford imposed a twelve month suspension from the practice of law in Maine, effective as of the date of the decision, with the attendant obligation that the respondent must petition for reinstatement in accordance with Maine's Disciplinary Rules of Procedure.

On February 6, 2018, having learned of the respondent's suspension in Maine, Connecticut's Chief Disciplinary Counsel filed an application in the Connecticut Superior Court pursuant to Practice Book § 2-39[9] seeking commensurate disciplinary action against the respondent's Connecticut law license. The application alleged that the respondent was admitted to the Connecticut bar on June 10, 1994, and that, on January 24, 2018, he had been suspended from the practice of law in Maine for a period of twelve months. A copy of the Maine order was attached to the application.

The respondent filed an answer in response to the application in accordance with Practice Book § 2-39, which he later amended. He also filed a number of exhibits with the court. In his amended answer, the respondent admitted to his twelve month suspension in Maine but argued that reciprocal action by Connecticut was unwarranted. The respondent principally argued that he should never have been subject to disciplinary proceedings in Maine because he had appeared before the Maine Supreme Judicial Court in *Lincoln* as a self-represented Connecticut citizen, not as a licensed attorney, and that any application of the rules of professional responsibility to his conduct while prosecuting the appeal as a self-represented party necessarily implicated and violated his rights under the first and fourteenth amendments to the United States constitution to petition the government without threat of punishment, reprisal or prior restraint. According to the respondent, any reciprocal disciplinary proceeding in Connecticut stemming from the allegedly unconstitutional Maine disciplinary action similarly would be unconstitutional.

The matter was assigned for a hearing before the court, *Sheridan, J.* At the hearing, the court afforded the respondent ample opportunity to present witnesses as well as additional evidence pertaining both to the underlying litigation in Maine and to the resulting disciplinary proceedings. On June 4, 2018, the court issued a decision concluding that the respondent's arguments largely were without merit or inconsequential, and that he most certainly fell short of establishing by clear and convincing evidence any of the defenses advanced in his

answer. The court found that commensurate discipline was appropriate under the circumstances and ordered the respondent suspended from the practice of law in Connecticut for a period of twelve months, retroactive to January 24, 2018. The court further ordered that, to be reinstated to the bar at the conclusion of his suspension, the respondent was required to apply for reinstatement in accordance with Practice Book § 2-53. This appeal followed.[10]

We begin with governing principles of law, including our standard of review. "Attorney disciplinary proceedings are for the purpose of preserving the courts of justice from the official ministration of persons unfit to [practice] in them. . . . An attorney as an officer of the court in the administration of justice, is *continually* accountable to it for the manner in which he exercises the privilege which has been accorded him. His admission is upon the implied condition that his continued enjoyment of the right conferred is dependent upon his remaining a fit and safe person to exercise it, so that when he, *by misconduct in any capacity*, discloses that he has become or is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited. . . . Therefore, [i]f a court disciplines an attorney, it does so not to mete out punishment to an offender, but [so] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession." (Citations omitted; emphasis added; internal quotation marks omitted.) *Statewide Grievance Committee* v. *Spirer*, 247 Conn. 762, 771–72, 725 A.2d 948 (1999).

Practice Book § 2-39 sets forth the procedures by which Connecticut courts may impose commensurate reciprocal discipline on an attorney admitted to the Connecticut bar who has been disciplined for professional misconduct in another jurisdiction. See footnote 9 of this opinion; *In re Weissman*, 203 Conn. 380, 383, 524 A.2d 1141 (1987). Section 2-39 compels disciplinary counsel, upon learning of an attorney's discipline occurring in another jurisdiction, to file a copy of the disciplinary order with the Superior Court, which then serves an order to show cause directing the attorney to file an answer "admitting or denying the action in the other jurisdiction and setting forth, if any, reasons why commensurate action in [Connecticut] would be unwarranted." Practice Book § 2-39 (b). The certified copy of the other jurisdiction's disciplinary order constitutes prima facie evidence that the order entered "and that the findings contained therein are true." Practice Book § 2-39 (b). After conducting a hearing, the court "shall take commensurate action unless it is found that any defense set forth in the answer has been established

by clear and convincing evidence." Practice Book § 2-39 (c).

"[C]lear and convincing proof denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist. . . . Our Supreme Court has stated that the clear and convincing standard is a demanding standard that should operate as a weighty caution upon the minds of all judges, and it forbids relief whenever the evidence is loose, equivocal or contradictory." (Citations omitted; internal quotation marks omitted.) *Shelton* v. *Statewide Grievance Committee*, 85 Conn. App. 440, 443–44, 857 A.2d 432 (2004), aff'd, 277 Conn. 99, 890 A.2d 104 (2006).

Because whether a respondent has established a defense to a disciplinary order by clear and convincing evidence presents a question of fact for the trier, it follows that our review of a court's finding that a respondent has failed to meet that high burden of persuasion is limited to whether that finding is clearly erroneous.[11] See, e.g., *Melillo* v. *New Haven*, 249 Conn. 138, 150, 732 A.2d 133 (1999) (reviewing under clearly erroneous standard court's finding that appellant failed to meet burden of proof); *Jazlowiecki* v. *Cyr*, 4 Conn. App. 76, 77, 492 A.2d 516 (1985) (same); *Ruggiero* v. *East Hartford*, 2 Conn. App. 89, 96, 477 A.2d 668 (1984) (same).[12] Under this highly deferential standard, "[w]e do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported. . . . A finding of fact is clearly erroneous when there is no evidence to support it . . . or when although there is evidence in the record to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Depart. of Transportation* v. *Cheriha, LLC*, 155 Conn. App. 181, 191–92, 112 A.3d 825 (2015).

Next, before turning to our discussion of the claims raised by the respondent on appeal, it is helpful to acknowledge what claims the respondent has chosen not to raise and, thus, what is not properly before us. The respondent has not claimed that the misconduct in which he was found to have engaged by the Maine Supreme Judicial Court either did not occur or, in some manner, was insufficient to support his violations of the particular rules of professional conduct he was found

to have violated by Justice Clifford. He has not claimed that the same misconduct or actions, if taken in Connecticut, would not have constituted violations of Connecticut's corresponding rules of professional conduct and, thus, that reciprocal discipline would be inappropriate. Finally, the respondent does not claim that the trial court, having concluded that reciprocal discipline was warranted in this jurisdiction, abused its discretion by imposing a one year suspension rather than some lesser sanction.[13] The respondent argues only that the court should not have imposed *any* reciprocal discipline because, by doing so, it allegedly violated a myriad of constitutional rights.

Finally, to the extent that the respondent seeks to attack collaterally the underlying Maine disciplinary judgment, we, of course, have no appellate jurisdiction to alter the Maine judgment. See General Statutes § 51-197a (limiting appellate jurisdiction of this court to appeals from final judgments of our Superior Court unless otherwise provided by statute). Here, our review is limited as to whether the trial court properly rendered its judgment in accordance with the dictates of Practice Book § 2-39 (c). Although the respondent was free to seek appellate review of the Maine disciplinary judgment by filing an appeal with the Maine Supreme Judicial Court; see *Board of Overseers of the Bar* v. *Condon*, 940 A.2d 1065 (Me. February 5, 2008); it does not appear from the record presented to us that the respondent availed himself of such review, arguably waiving any appellate review he may have had with respect to the Maine disciplinary judgment. See *Sousa* v. *Sousa*, 322 Conn. 757, 771–72, 143 A.3d 578 (2016) ("collateral attack on a judgment is a procedurally impermissible substitute for an appeal").

I

The respondent first claims that the court improperly determined that he had failed to prove by clear and convincing evidence that the reciprocal suspension of his law license, which was based on his actions while prosecuting an appeal as a self-represented party, effectively violated his first and fourteenth amendment rights to petition the government without the fear of reprisal. As part of this claim, the respondent also suggests that his statements and arguments made while prosecuting the appeal before the Maine Supreme Judicial Court were protected political speech that could not have formed a proper basis for disciplinary proceedings. In other words, the respondent has raised arguments implicating both the petition and the free speech clause of the first amendment.[14] The petitioner responds that we should decline to review this claim entirely because the respondent has not adequately briefed it. The petitioner notes that the respondent has provided no direct authority that his presentation of legal issues that the Maine Supreme Judicial Court found to be "meritless,"

"frivolous," and "devoid of legal authority to support them," was protected speech exempt from the application of disciplinary rules, or that his status as a self-represented party should have precluded any finding that he violated the Rules of Professional Conduct. On the basis of the briefing and record provided, we conclude that the respondent's arguments are unpersuasive and, for the reasons that follow, the court's finding that the respondent failed to meet his burden of demonstrating a defense to the Maine disciplinary proceeding by clear and convincing proof was not clearly erroneous.

At their core, the respondent's constitutional arguments, to the extent that they are discernable, primarily focus on the fact that he was representing himself before the Maine Supreme Judicial Court in the *Lincoln* matter and that, because he allegedly was not acting in his capacity as an attorney but, rather, in his capacity as a private citizen, he simply was not accountable to the rules of professional conduct or related disciplinary procedures. According to the respondent, under these circumstances, holding him accountable to standards applicable to attorneys unfairly infringed on first amendment rights held by ordinary citizens.

There is no dispute that a person's ability to have access to courts to litigate civil disputes is among the rights protected under the first amendment's petition clause. See *Borough of Duryea* v. *Guarnieri*, 564 U.S. 379, 387, 131 S. Ct. 2488, 2494, 180 L. Ed. 2d 408 (2011) ("the [p]etition [c]lause [of the first amendment] protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes"). In raising his first amendment arguments before the trial court, however, the respondent failed to cite to any case, from any jurisdiction, in which a court has ruled that the enforcement of attorney disciplinary rules on an attorney engaging in self-representation before the court implicates that attorney's right to petition as protected by the first amendment. The respondent has not remedied this deficiency in his appellate brief.[15] Additionally, the respondent cites no authority for the proposition that an attorney acting as a self-represented litigant should be held to a different standard of professional conduct than that applied to an attorney acting on behalf of a client.

Contrary to the assertions of the respondent, this court previously has stated that the "Rules of Professional Conduct bind attorneys to uphold the law and to act in accordance with high standards *in both their personal and professional lives.*" (Emphasis added.) *Statewide Grievance Committee* v. *Egbarin*, 61 Conn. App. 445, 450, 767 A.2d 732, cert. denied, 255 Conn. 949, 769 A.2d 64 (2001). In support of that statement, we relied on language found in the preamble to our Rules of Professional Conduct, which provides in relevant part that "[a] lawyer, as a member of the legal profes-

sion, is a representative of clients, an officer of the legal system and *a public citizen having special responsibility for the quality of justice.*" (Emphasis added.)

In *In the Matter of Presnick*, 19 Conn. App. 340, 345–46, 563 A.2d 299, cert. denied, 213 Conn 801, 567 A.2d 833 (1989), an en banc panel of this court considered whether we had the authority to suspend an attorney from filing papers and appearing before this court for disobeying an order in a case in which the attorney was representing himself. We concluded that we had the authority to discipline an attorney despite the fact that the underlying behavior of the attorney resulting in the sanction occurred while the attorney was appearing as a self-represented party. Id., 341–42. In so holding, we indicated that "[a]lthough misconduct of an attorney may be unconnected with representation of another as a member of the bar, punishment may be imposed for that misconduct because it is an indication of a general unfitness to practice law. . . . Whether an attorney represents himself or not, his basic obligation to the court as an attorney remains the same. He is an officer of the court no matter who is the client. Disciplinary proceedings not only concern the rights of the lawyer and the client, but also the rights of the public and the rights of the judiciary to ensure that lawyers uphold their unique position as officers and commissioners of the court." Id., 344-45.

Our statements in *Egbarin* and *In the Matter of Presnick* recognize that an attorney always must conduct himself or herself in accordance with professional standards and belie the respondent's arguments that seek to differentiate for disciplinary and constitutional purposes between an attorney's actions taken on behalf of a client and actions taken in representing himself in his role as a citizen. Our Supreme Court similarly has stated that an attorney, as an officer of the court, "is *continually* accountable to [the court] for the manner in which he exercises the privilege which has been accorded him" and attorney disciplinary proceedings are appropriate with respect to "misconduct *in any capacity*," which necessarily encompasses actions taken by attorneys who are engaged in self-representation. (Emphasis added.) *Statewide Grievance Committee* v. *Spirer*, supra, 247 Conn. 771–72. Said another way, it is the unique position attorneys enjoy that makes it important that they, *at all times*, conduct themselves in accordance with the Rules of Professional Conduct; see *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 237–38, 558 A.2d 986 (1989); and the mere fact that an attorney may be appearing before a tribunal in a self-represented capacity does not lessen his duty to comply with such rules. If, through his actions, an attorney demonstrates that he cannot be "entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited." *State-*

*wide Grievance Committee* v. *Spirer*, supra, 772.

Our conclusion that the respondent had the same professional obligation to the court when representing himself as when representing a client undermines the central construct in his first amendment challenge to the imposition of reciprocal discipline on him in this case. He advances no factual or legal basis for reaching any other conclusion. To avoid reciprocal discipline, it is the respondent who has the burden to demonstrate the validity of some defense; it is not the duty of the court or bar counsel to negate every posited defense. His arguments on appeal unquestionably fall short of convincing us that the trial court's finding that he failed to prove by clear and convincing evidence a defense premised on a violation of first amendment rights was clearly erroneous.

## II

The respondent also claims that, under the circumstances of this case, the Maine court's disciplinary proceedings violated his rights to due process and equal protection as protected by the fourteenth amendment to the constitution of the United States, and that this violation should have barred the imposition of reciprocal discipline by the Connecticut trial court. The petitioner argues that the respondent failed to raise this claim in the trial court and, even if raised, that he failed to provide the trial court with a complete record adequate to review the claim. Similar to the respondent's prior claim, he has failed to demonstrate with respect to this claim that the trial court's finding that he failed to prove *any* defense raised in his answer by clear and convincing evidence was clearly erroneous.

"Because a license to practice law is a vested property interest, an attorney subject to discipline is entitled to due process of law. . . . In attorney grievance proceedings, due process mandates that [b]efore discipline may be imposed, an attorney is entitled to notice of the charges, a fair hearing and an appeal to court for a determination of whether he or she has been deprived of these rights in some substantial manner." (Citation omitted; internal quotation marks omitted.) *Statewide Grievance Committee* v. *Egbarin*, supra, 61 Conn. App. 456. Accordingly, if proven by clear and convincing evidence, the failure to receive due process in a disciplinary proceeding in another jurisdiction certainly would be a proper defense to the imposition of reciprocal discipline in Connecticut.

Here, however, nothing in the record before us suggests that the respondent raised even a colorable claim that he was denied due process in the Maine disciplinary proceedings. The respondent makes no credible claim that he lacked sufficient notice or an opportunity to be heard. The respondent's arguments and reasoning, both in his pleadings before the trial court and to this court

on appeal, are circuitous, repetitious, and lack a cogent discussion that is logically and legally tethered to the issue under consideration. This makes it all the more difficult to evaluate whether his claim properly was raised and preserved for appellate review. For example, a significant portion of his answer to the application for reciprocal discipline focused on the Maine Supreme Judicial Court's resolution of the merits of the *Lincoln* matter rather than discussing the court's findings of misconduct by the respondent that formed the basis of the court's sanction orders and the subsequent disciplinary proceedings. Further, as the petitioner argues, the respondent failed to provide the trial court with a complete record of the appellate proceedings before the Maine Judicial Court.[16]

Even if we deem his claim preserved, however, much of the veritable laundry list of constitutional arguments and alleged violations of rights, including fleeting references to the ninth amendment, the supremacy clause, the commerce clause, and the full faith and credit clause of the United States constitution, consists of no more than generalized statements of legal propositions, devoid of any cogent analysis or application of the facts to any of the asserted constitutional doctrines relative to the subject matter at hand: the reciprocal enforcement of rules governing attorney professional conduct. Having thoroughly reviewed the record and the briefs, we are unpersuaded that the court's finding that the respondent failed to demonstrate by clear and convincing evidence a cognizable defense to the Maine disciplinary proceedings was clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The United States Court of Appeals for the First Circuit and the United States District Court for the District of Connecticut each subsequently imposed a one year reciprocal suspension of the respondent's right to practice before them on the basis of the same Maine disciplinary action. See *In re Burbank*, United States Court of Appeals, Docket No. 19-8010 (1st Cir. Oct. 28, 2019); *In re Burbank*, United States District Court, Docket No. 3:18-GP-00006 (MPS) (D. Conn. Nov. 8, 2018).

[2] The respondent also claims that the disciplinary proceedings violated various rights afforded to him under the Connecticut constitution. The respondent, however, has failed to analyze adequately his state constitutional claims because, in his appellate brief, he has not "functionally address[ed] in detail the subject matter of most of the factors" set forth in *State* v. *Geisler*, 222 Conn. 672, 610 A.2d 1225 (1992), which our Supreme Court has made clear is necessary for any independent state constitutional analysis. See *State* v. *Santiago*, 305 Conn. 101, 250–51, 49 A.3d 566 (2012), superceded in part on other grounds by *State* v. *Santiago*, 318 Conn. 1, 122 A.3d 1 (2015). Because the respondent has not briefed adequately his state constitutional claims, we deem them abandoned. See *Wasko* v. *Farley*, 108 Conn. App. 156, 164, 947 A.2d 978, 985, cert. denied, 289 Conn. 922, 958 A.2d 155 (2008).

[3] The trial court effectively adopted the factual findings set forth in the opinions of the Maine Supreme Judicial Court and the retired justice who oversaw the Maine disciplinary proceeding, stating that it "[would] not revisit the factual findings made by the various courts in Maine that have fully reviewed, analyzed, and vetted the evidence." See *Lincoln* v. *Burbank*, 147 A.3d 1165, 1169 (2016), cert. denied, U.S. , 137 S. Ct. 1338, 197 L. Ed. 2d 520 (2017); *Board of Overseers of the Bar* v. *Burbank*, BAR-17-12 (January 29, 2018) (Clifford, J.). Accordingly, we rely on those opinions in setting forth the facts and procedural history underlying the present appeal.

[4] The crux of the litigation was aptly described by the United States Court of Appeals for the First Circuit in its own reciprocal disciplinary action against the respondent. See *In re Burbank*, supra, United States Court of Appeals, Docket No. 19-8010. "The neighbors had been using for decades, without issue or objection, beach access stairs adjacent to [the Burbank property] to descend an embankment—they would then cross a small portion of [the Burbank property] in order to get to the beach. [The respondent] took it upon himself to report the stairs as a zoning violation and, ultimately, he removed the stairs (contrary to an advisement from the town and against the wishes of his fellow co-owners), giving rise to this lawsuit." Id.

[5] Subsection (f) of Rule 13 of the Maine Rules of Appellate Procedure provides: "If, after a separately filed motion or a notice from the court and a reasonable opportunity to respond, the Law Court determines that an appeal, motion for reconsideration, argument, or other proceeding before it is frivolous, contumacious, or instituted primarily for the purpose of delay, it may award to the opposing parties or their counsel treble costs and reasonable expenses, including attorney fees, caused by such action."

[6] The respondent did not withdraw as counsel for the remaining Burbank defendants until the Supreme Judicial Court had ordered the respondent to show cause as to why he should not be sanctioned for attempting to represent three appellees while simultaneously representing himself as the appellant.

[7] The text and numbering of the relevant Maine and Connecticut rules of professional conduct are virtually identical. The following are Connecticut's rules, which govern with respect to the reciprocal disciplinary ruling under review.

Rule 1.1, titled "Competence," provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

Rule 1.3, titled "Diligence," provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

Rule 3.1, titled "Meritorious Claims & Contentions," provides in relevant part: "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. . . ."

Rule 3.4, titled "Fairness to Opposing Party & Counsel," provides in relevant part: "A lawyer shall not . . . (3) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists . . . ."

Rule 8.4, titled "Misconduct," provides in relevant part: "It is professional misconduct for a lawyer to: (1) Violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another. . . ."

[8] It is unclear from Justice Clifford's decision what rule of professional conduct, if any, the court deemed implicated by an attorney's having filed for bankruptcy or his resulting inability to satisfy a civil judgment or monetary sanction. The respondent, however, has not raised any specific claim on appeal regarding these findings or suggested that they provide support for any of the constitutional claims that he raises. Furthermore, even if we were to conclude that these particular findings were irrelevant or improper factual predicates on which to base a finding of attorney misconduct, any such error likely was rendered harmless in light of the extensive other findings supporting the violations asserted. See *Henry* v. *Statewide Grievance Committee*, 111 Conn. App. 12, 27–28, 957 A.2d 547 (2008) (holding any impropriety in relying on allegedly irrelevant factual findings in finding violations of rules of professional conduct necessarily harmless if other evidence existed sufficient to support court's ultimate findings).

[9] Practice Book § 2-39 provides: "(a) Upon being informed that a lawyer admitted to the Connecticut bar has resigned, been disbarred, suspended or otherwise disciplined, or placed on inactive disability status in another jurisdiction, and that said discipline or inactive disability status has not been stayed, the disciplinary counsel shall obtain a certified copy of the order and file it with the Superior Court for the judicial district wherein the lawyer maintains an office for the practice of law in this state, except that, if the lawyer has no such office, the disciplinary counsel shall file the certified copy of the order from the other jurisdiction with the Superior Court for the judicial district of Hartford. No entry fee shall be required for proceedings hereunder.

"(b) Upon receipt of a certified copy of the order, the court shall forthwith

cause to be served upon the lawyer a copy of the order from the other jurisdiction and an order directing the lawyer to file within thirty days of service, with proof of service upon the disciplinary counsel, an answer admitting or denying the action in the other jurisdiction *and setting forth, if any, reasons why commensurate action in this state would be unwarranted.* Such certified copy will constitute prima facie evidence that the order of the other jurisdiction entered and that the findings contained therein are true.

"(c) Upon the expiration of the thirty day period the court shall assign the matter for a hearing. After hearing, *the court shall take commensurate action unless it is found that any defense set forth in the answer has been established by clear and convincing evidence.*

"(d) Notwithstanding the above, a reciprocal discipline action need not be filed if the conduct giving rise to discipline in another jurisdiction has already been the subject of a formal review by the court or Statewide Grievance Committee." (Emphasis added.)

[10] Although, as of the date of oral argument before this court, the respondent's suspension from the practice of law in Connecticut had expired by its terms on January 24, 2019, the respondent's license remains suspended according to the Judicial Branch's website. Even if the suspension order under consideration no longer were in effect, however, that fact alone would not render the present appeal moot because an expired suspension continues to have adverse collateral consequences on an attorney's reputation and professional standing. See *Statewide Grievance Committee* v. *Whitney*, 227 Conn. 829, 837–38 n.13, 633 A.2d 296 (1993) (holding that because prior misconduct of attorney may be considered in subsequent disciplinary proceeding, expiration of suspension during pendency of appeal from suspension order did not render appeal moot due to potentially prejudicial collateral consequences).

[11] "The concept of a burden of persuasion ordinarily applies to questions of fact, and ordinarily is expressed in one of three ways: (1) a preponderance of the evidence; (2) clear and convincing evidence; or (3) proof beyond a reasonable doubt." *Christian Activities Council, Congregational* v. *Town Council*, 249 Conn. 566, 580, 735 A.2d 231, 240 (1999).

[12] The respondent argues that he is entitled to de novo review because "whether the court held the parties to the proper standard of proof is a question of law." The respondent is not arguing on appeal, however, that the court made a legal error by choosing and applying an incorrect burden of persuasion in evaluating his defenses. Rather, acknowledging that he bears the burden of proving a defense by clear and convincing evidence, he challenges the court's factual finding that he failed to meet that standard.

[13] "[C]ommensurate action under [Practice Book § 2-39] (c) does not mean identical action. The trial court ha[s] inherent judicial power, derived from judicial responsibility for the administration of justice, to exercise sound discretion to determine what sanction to impose in light of the entire record before it." (Internal quotation marks omitted.) *In re Weissman*, supra, 203 Conn. 384. Accordingly, appellate review of the terms of any sanction imposed is limited to whether the court abused its discretion. In the present case, the respondent argues only that the court was precluded from imposing *any* discipline with respect to his Connecticut license. The respondent does not claim that the court abused its discretion by imposing a yearlong suspension rather than some lesser sanction.

[14] The first amendment to the United States Constitution provides in relevant part that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I. "These two guarantees are known, respectively, as the Speech Clause and the Petition Clause." *Mirabella* v. *Villard*, 853 F.3d 641, 653 (3d Cir. 2017). "[T]he core value of the Free Speech Clause of the First Amendment" is "[t]he public interest in having free and unhindered debate on matters of public importance." *Pickering* v. *Board of Education*, 391 U.S. 563, 573, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968). "The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives . . . ." *Borough of Duryea* v. *Guarnieri*, 564 U.S. 379, 388, 131 S. Ct. 2488, 180 L. Ed. 2d 408 (2011).

[15] Although the respondent quotes extensively from the dissenting opinion in *Cologne* v. *Westfarms Associates*, 192 Conn. 48, 469 A.2d 1201 (1984), he fails to elaborate how the dissent's discussion of the special nature of the protections and freedoms afforded to speech under the first amendment are applicable to the facts of the present case.

[16] For example, he did not provide the court with copies of any transcripts of the proceedings before the Maine Supreme Judicial Court or with copies of the relevant appellate pleadings and briefs that the Maine Supreme Court identified as having "consistently disregarded standards of law and practice that govern appellate review." *Lincoln* v. *Burbank*, supra, 147 A.3d 1179.

―――――――――――――――――