******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# OFFICE OF CHIEF DISCIPLINARY COUNSEL *v.* JOHN D. VENA II
## (AC 47495)

Elgo, Clark and Westbrook, Js.

*Syllabus*

The respondent attorney appealed from the trial court's judgment suspending him from the practice of law in Connecticut for five years as reciprocal discipline to his suspension from the practice of law in Virginia for five years for engaging in the unauthorized practice of law. He claimed, inter alia, that the court lacked authority to suspend him for five years pursuant to the rule of practice (§ 2-39) because he was not a member of the Virginia bar and, thus, the discipline was not reciprocal. *Held*:

The trial court had subject matter jurisdiction over the attorney discipline brought pursuant to Practice Book § 2-39, as that rule plainly outlines the court's authority to hear and determine whether discipline is appropriate for attorneys admitted in Connecticut and disciplined in another jurisdiction, and the respondent provided no analysis to support his claim that the court lacked authority because he was not admitted to practice in Virginia.

The respondent's unpreserved claim that the trial court's imposition of reciprocal discipline against him violated his right to due process failed under the third prong of *State* v. *Golding* (213 Conn. 233), as he failed to establish a constitutional violation that deprived him of a fair trial.

The trial court's finding that the respondent failed to demonstrate by clear and convincing evidence that the Virginia proceedings against him were so lacking in notice or opportunity to be heard that it would constitute a grave injustice to impose commensurate discipline in Connecticut was not clearly erroneous.

The trial court did not abuse its discretion by suspending the respondent from the practice of law in Connecticut for a period of five years, as it fell within the discipline warranted under Practice Book § 2-39.

Argued May 20—officially released October 28, 2025

*Procedural History*

Presentment by the petitioner for alleged professional misconduct by the respondent, brought to the Superior Court in the judicial district of Hartford and tried to the court, *Cobb, J.*; judgment suspending the

respondent from the practice of law for five years, from which the respondent appealed to this court. *Affirmed.*

*James F. Sullivan,* for the appellant (respondent).

*Brian B. Staines,* chief disciplinary counsel, with whom, on the brief, was *Thomas J. Sousa, Jr.,* assistant chief disciplinary counsel, for the appellee (petitioner).

*Opinion*

CLARK, J. The present appeal arises out of a reciprocal disciplinary proceeding commenced pursuant to Practice Book § 2-39 by the petitioner, the Office of Chief Disciplinary Counsel, against the respondent, John D. Vena II, after his suspension from the practice of law in Virginia for five years for engaging in the unauthorized practice of law. The respondent appeals from the judgment of the trial court, which entered a commensurate order suspending the respondent from the practice of law in Connecticut for five years.

The respondent claims on appeal that the trial court (1) lacked authority to suspend him for five years pursuant to Practice Book § 2-39 because he was not a member of the Virginia bar and, therefore, the discipline was not reciprocal, (2) erred by concluding that he failed to establish a defense to reciprocal discipline under § 2-39, and (3) abused its discretion by imposing a five year suspension in Connecticut pursuant to § 2-39 because the misconduct that occurred in Virginia warrants different discipline in Connecticut. We disagree and, accordingly, affirm the judgment of the trial court.

The record reveals the following facts and procedural history relevant to the resolution of this appeal. The respondent is an attorney admitted to the practice of law in Connecticut. Effective May 19, 2023, the respondent was suspended from the practice of law in Virginia for a period of five years by the Virginia State Bar Disciplinary Board (board). The case before the board

primarily concerned then Fairfax County Circuit Court Judge Thomas Mann's complaint to the Virginia State Bar with respect to the respondent's conduct on December 17, 2021, before the Fairfax County Circuit Court.

In its memorandum order of suspension (order of suspension), the board made the following findings relating to the respondent's conduct on December 17, 2021. On that date, the respondent appeared before Judge Mann at the Fairfax County Circuit Court's monthly discontinuance docket in the case *Lalich* v. *Lewis*. Kimberly Lalich, the plaintiff in the aforementioned case, retained Tyrone Law Group as counsel prior to the December 17, 2021 hearing. Bruce A. Johnson was the attorney of record in her case. The respondent was employed by Tyrone Law Group. No court reporter was present at the December 17, 2021 discontinuance docket, but the audio of the proceedings was recorded, and the relevant portions were transcribed and entered as an exhibit by the Virginia State Bar in the respondent's Virginia disciplinary proceeding. The transcript of the December 17, 2021 hearing indicates that the respondent represented himself as an attorney and engaged in the practice of law before the Virginia court. Specifically, the board found that the hearing transcript reflects the following.[1] The court asked, "So who's here?" and the respondent replied, "John Vena on behalf of the plaintiff. Kimberly Lalich, the plaintiff, is also appearing." When asked, "And who do you represent?" the respondent replied, "Ms. Lalich." The respondent had further conversation with the court about the facts in *Lalich* v. *Lewis* and argued procedural matters. At no time did the respondent inform the court that he was not a member of the Virginia bar, nor did he state that he was only there to inform the court that the

---

[1] The transcript of the Virginia proceeding was not made part of the record in the Connecticut proceeding.

attorney of record was late. The court asked the respondent to enter his appearance in writing, but the respondent would not do so. Judge Mann and his law clerk determined that the respondent was not a member of the Virginia bar, and Judge Mann filed a complaint to the Virginia State Bar that same day alleging that the respondent engaged in the unauthorized practice of law.

The order of suspension further reveals the following facts regarding the respondent's Virginia disciplinary proceeding. A prehearing conference in the respondent's Virginia disciplinary matter was conducted on April 19, 2023. At the prehearing conference, the respondent made a motion to continue the matter so that he could obtain counsel. The motion was denied by the chair of the board because the respondent received notice of the proceedings and hearing in January, February, and March, 2023, and, therefore, had adequate time to obtain counsel.[2] At the prehearing conference the respondent was granted the opportunity to submit, late, a witness list and exhibits, and to have witnesses participate remotely. He also had the opportunity to object to the Virginia State Bar's exhibits. The respondent was additionally reminded that it was his responsibility to arrange for the technology for his remote witnesses and to coordinate technology issues with the clerk's office prior to the hearing. At the prehearing conference the respondent "was disruptive, rude, and demonstrated a complete disrespect for the disciplinary proceedings and the parties to the prehearing conference by refusing to comply with requests from the chair to conduct himself in a professional and polite manner, to discontinue insulting other parties on the call, and stop interrupting other people while they were speaking."

[2] The board's order also stated: "All legal notices of the date and place of the April 28 . . . and May 19, 2023 hearings were timely sent by the Clerk of the Disciplinary System . . . in the manner prescribed by the Rules of the Supreme Court of Virginia . . . ."

The hearing in the respondent's matter was conducted by the board over the course of two days: April 28 and May 19, 2023. On those two days, the respondent appeared in person as a self-represented party before the board. The hearing began on April 28, 2023. Bar counsel presented her case first. The respondent did not make prior arrangements for remotely participating witnesses or to understand the technology, which caused considerable disruption. "It was necessary for bar counsel or the clerk's office to allow the respondent to use their computers" in order for the respondent to cross-examine witnesses. Moreover, the respondent "repeatedly interrupted other parties and the board, spoke while other parties were speaking, made rude and disrespectful comments while others were speaking, cursed at one witness, and continuously demonstrated contempt and disrespect for bar counsel and the chair." Bar counsel concluded her case at 4:30 p.m. on April 28, 2023, at which point it was determined that the respondent would require another day to present his case, so the parties agreed to continue the hearing until May 19, 2023.

On May 19, 2023, the respondent, again, had not arranged for remote participation of witnesses and was unable to understand the technology and "once again demonstrated disrespectful, rude, and disorderly conduct by refusing to cooperate with the chair's requests to conduct himself in a professional manner, by continuing to talk over other parties and make comments about other speakers, and continually disparaging the disciplinary process." The board and the clerk's office assisted with providing technology so that the respondent could have his witnesses participate remotely to ensure that he had the opportunity to present his case and evidence. Over the course of the two day hearing, both parties had the opportunity to offer and to object to proffered

exhibits. The respondent presented four witnesses, submitted four exhibits, three of which were admitted into evidence, and concluded his case on May 19, 2023.

In its order of suspension, dated August 1, 2023, the board suspended the respondent from the practice of law in Virginia for five years effective May 19, 2023. The board imposed the suspension on the basis of its findings by clear and convincing evidence that the respondent engaged in the unauthorized practice of law in violation of rule 5.5 (c) of the Virginia Rules of Professional Conduct, and engaged in conduct involving dishonesty, fraud, deceit or misrepresentation that reflects adversely on his honesty, trustworthiness or fitness to practice law, in violation of Rule 8.4 (b) and (c) of the Virginia Rules of Professional Conduct. Specifically, the board found by clear and convincing evidence "that the respondent's conduct on December 17, 2021, before the Fairfax County Circuit Court constituted the practice of law in Virginia. When the case was called by the court, the respondent stated that he was there for Ms. Lalich, the plaintiff. The respondent in fact spelled his name for the court so that the court would know who he was. Although the respondent at times noted that he was with the Tyrone Law Group, he did not explain to the court that he was not licensed to practice law in Virginia, nor did he state that he was only there to inform the court that the Virginia attorney retained to handle the matter was running late. The respondent was evasive with the court about noting his appearance with the court and deliberately refused to fill out the paperwork provided to him by the court to note his appearance. The respondent presented procedural matters and facts to the court regarding [Lalich's] case. The respondent's testimony inferred that, had he not been in court on December 17, 2021, to take the actions that he did, [Lalich], as well as his law firm, would have suffered adverse consequences. The board

found that the respondent held himself out to be a lawyer by his representations to the court and by arguing procedural aspects of [Lalich's] case to the court." Furthermore, the board found for the same reasons that "the respondent committed a deliberately wrongful act that reflected adversely on his honesty, trustworthiness and fitness to practice law. The respondent knew he was not licensed to practice before the Fairfax County Circuit Court and he also knew that a Virginia licensed attorney had been retained to handle the matter for [Lalich] . . . . There was no reason for the respondent to become involved in the matter before Judge Mann on December 17, 2021, yet the respondent chose to stand with [Lalich] and act on her behalf and to protect his law firm. When repeatedly asked by Judge Mann and the court staff to note his appearance, the respondent failed to inform the court of his status as a nonlicensed attorney but instead misrepresented himself. Additionally, the respondent was dishonest with the [Virginia State Bar] during the investigation of the complaint regarding his conduct in court as he misrepresented what he had said to the court as well as his actions in the courtroom."

After the board concluded by clear and convincing evidence that the respondent violated rules 5.5 (c) and 8.4 (b) and (c) of the Virginia Rules of Professional Conduct, to determine the appropriate sanction, the board considered evidence on both aggravating and mitigating factors for sanctions. The board found the following aggravating factors: the respondent (1) engaged in "[b]*ad faith obstruction of the disciplinary proceeding* by intentionally failing to comply with rules or orders"; (2) engaged in "[d]*eceptive practices during the disciplinary process*"; (3) "failed to demonstrate any appreciation of the wrongful nature of his unauthorized representation of a client in the Fairfax County Circuit Court, his misrepresentation to the court, or

his untruthful conduct during the Virginia State Bar's investigation"; and (4) had practiced law for more than three decades. (Emphasis in original). The only mitigating factor the board found was that the respondent had no prior disciplinary record.

The respondent appealed from the board's order of suspension to the Virginia Supreme Court, which dismissed the appeal.

In early December, 2023, the petitioner received notification of the respondent's Virginia suspension. On December 21, 2023, the petitioner filed an application for reciprocal discipline in the Superior Court pursuant to Practice Book § 2-39 seeking commensurate disciplinary action against the respondent. Attached to the application was a copy of the board's order of suspension. The application alleged that the respondent was admitted to the Connecticut bar on January 30, 1986, and that, effective May 19, 2023, the respondent had been suspended from the practice of law in Virginia for a period of five years. On December 27, 2023, the trial court issued an order for hearing and notice. The order for hearing and notice directed the respondent to "file within thirty . . . days of service, with proof of service upon the Disciplinary Counsel, an answer admitting or denying the action in the other jurisdiction and setting forth, if any, reasons why commensurate action in this state would be unwarranted."

The return of service indicates that the respondent was served by certified mail with the application for reciprocal discipline, the order for hearing and notice, and a certified copy of the Virginia order of suspension on January 2, 2024.[3] The matter was assigned for a hearing before the court, *Cobb, J.* As of the March 11,

_____

[3] At the hearing, the petitioner indicated that service was made on January 13, 2024. The respondent does not claim that he was not properly served, and he did appear.

2024 presentment hearing, the respondent had not filed an answer to the application for reciprocal discipline, as he was required to do pursuant to Practice Book § 2-39 (b).[4] Nevertheless, the court allowed the respondent to present evidence to attempt to prove any of the factors outlined in § 2-39 to show that commensurate discipline was unwarranted. At the hearing, the respondent was the only witness to testify and he offered no exhibits into evidence.

The respondent's relevant testimony at the presentment hearing, outlined herein, centered on his contention that the board made erroneous factual findings, that the proceedings were unfair, and that his actions and unblemished disciplinary history prior to the Virginia suspension did not warrant the discipline imposed.

The respondent testified that his actions on December 17, 2021, in the matter of *Lalich* v. *Lewis* were "wholly inadvertent." Specifically he testified that "[t]he attorney [he] worked for, Erick Tyrone . . . was to be the attorney of record but [Tyrone] got suspended by the Maryland Bar . . . ." For that reason, Tyrone "asked [the respondent] if [he] knew an attorney who had bar in Maryland, Virginia, and D.C. . . ." The respondent "knew of such an attorney" and his name was Bruce Johnson. The respondent then testified that he "introduced [Johnson] to [Tyrone] and about a week approximately prior to [the December 17, 2021 hearing], [Tyrone] hired [Johnson] on . . . a part-time basis" and that "[t]he [December 17, 2021] hearing was scheduled for a Thursday of the first week that [Johnson] was to work . . . ." The respondent testified that he "was more familiar with the facts of the case than was [Johnson], but [Johnson] was the attorney of record.

---

[4] The respondent filed his answer on October 31, 2024, well after the court had already issued its order imposing reciprocal discipline.

. . . So, [the respondent] agreed to go with him in case he needed assistance with the facts of the case" but "[w]hen [the respondent] got to the courtroom . . . [Johnson] was not there" so "[the respondent] went forward simply to request a continuance on the grounds that [the] attorney was late." The respondent testified that he "very clearly told [Judge Mann] [he] only represent[ed] the law firm and [he] did not represent [Lalich]." He further testified that Judge Mann "continued the case and [the respondent] met with the client in a . . . witness room off the back of the courtroom," but "[w]hen [they] got back, [Judge Mann] informed [the respondent] that [Johnson] had already requested a continuance through the daily court or something like that . . . and the other judge granted it, and this made [Judge Mann] very mad because he said he was the only judge who should be in control of whether or not parties get continuances on his docket." He further testified that "the case was continued and [he and Lalich] left the courtroom with no further action and [he] assumed everything was fine" but later "found out that . . . Judge Mann got mad at not only the lawyer, [Johnson], who requested the continuance but [also] the judge who granted the continuance. . . . [T]hen [Judge Mann] found out [the respondent] was not admitted in Virginia . . . and somehow decided to go after [him]."

The respondent then testified that the transcript produced at his hearing "was false . . . ." To support that assertion, he testified that, during the investigation of the complaint, he "demanded a transcript" of the December 17, 2021 proceedings but was told "at least six times, one, there was no court clerk, and two, that the recording of the courtroom was not working that day and there would be no transcript."

Next, he testified that, "[f]rom the very get-go, it was clear [he] was not going to get a fair hearing" in the Virginia disciplinary proceeding and that he "requested

[the panel] recuse themselves" and "objected to several of the procedures." He testified, for example, that "Judge Mann got promoted to the Virginia Supreme Court" and he believed that, "in deference to Judge Mann, they went along with his complaint . . . ." He also testified that he "attempted several times to request [a] continuance to get a lawyer" but that the request was denied. Additionally, the respondent testified that a bar investigator "served process on [his] daughter" but that his daughter "was thirteen years old."

The respondent further disputed additional facts found by the board in its order of suspension, including that bar counsel did not conclude her case until 6 p.m. on April 28, 2023, but that he had to "wind up [his] case" by 3 p.m. on May 19, 2023, which "condensed the testimony of all [his] witnesses."

Finally, the respondent testified that he has "been a member of the Connecticut bar for thirty-eight years, and [has] had no colorable claim of violation of any of the ethical codes or any misconduct whatsoever." He further testified that "Lalich ended up having her case settled" so "there was no harm to the client or to the public."

At the conclusion of the presentment hearing, the court determined that the respondent failed to establish by clear and convincing evidence any of the defenses to the imposition of commensurate discipline under Practice Book § 2-39. Thus, the court found reciprocal discipline was appropriate. On March 12, 2024, the court issued an order imposing reciprocal discipline and suspending the respondent from the practice of law in Connecticut for a period of five years, effective May 19, 2023. This appeal followed.

Before addressing the respondent's claims, we begin with a review of the well established principles of law

governing attorney disciplinary actions. "Attorney disciplinary proceedings are for the purpose of preserving the courts of justice from the official ministration of persons unfit to [practice] in them. . . . An attorney as an officer of the court in the administration of justice, is *continually* accountable to it for the manner in which he exercises the privilege which has been accorded him. His admission is upon the implied condition that his continued enjoyment of the right conferred is dependent upon his remaining a fit and safe person to exercise it, so that when he, *by misconduct in any capacity*, discloses that he has become or is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited. . . . Therefore, [i]f a court disciplines an attorney, it does so not to mete out punishment to an offender, but [so] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession." (Emphasis in original; internal quotation marks omitted.) *Chief Disciplinary Counsel* v. *Burbank*, 195 Conn. App. 416, 430, 224 A.3d 1185, cert. denied, 335 Conn. 906, 226 A.3d 707 (2020), cert. denied,      U.S.     , 141 S. Ct. 1059, 208 L. Ed. 2d 526 (2021).

"Practice Book § 2-39[5] sets forth the procedures by which Connecticut courts may impose commensurate

---

[5] Practice Book § 2-39 provides in relevant part that: "(a) Upon being informed that a lawyer admitted to the Connecticut bar has resigned, been disbarred, suspended or otherwise disciplined, or placed on inactive disability status in another jurisdiction, and that said discipline or inactive disability status has not been stayed, the disciplinary counsel shall obtain a certified copy of the order and file it with the Superior Court for the judicial district wherein the lawyer maintains an office for the practice of law in this state, except that, if the lawyer has no such office, the disciplinary counsel shall file the certified copy of the order from the other jurisdiction with the Superior Court for the judicial district of Hartford. No entry fee shall be required for proceedings hereunder.

reciprocal discipline on an attorney admitted to the Connecticut bar who has been disciplined for professional misconduct in another jurisdiction." (Footnote added.) Id. Pursuant to § 2-39 (a), upon being informed of an attorney's discipline in another jurisdiction, disciplinary counsel shall file a certified copy of the disciplinary order with the Superior Court. Pursuant to § 2-39 (b), the disciplinary order serves as prima facie evidence that the order and findings in it are true and as an order to show cause directing the disciplined attorney to file an answer within thirty days of service with reasons, if any, why commensurate action is unwarranted. See id., 431. Section 2-39 (c) provides: "Upon the expiration of the thirty day period the court shall assign the matter for a hearing. After hearing, the court shall take commensurate action unless it is found that the respondent has established by clear and convincing evidence that: (1) The procedure in the predicate matter was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or (2) There was such infirmity of proof establishing the misconduct in the predicate matter as to give rise to the clear conviction that the court could not, consistent with its duty, accept as final the conclusion on that subject; or (3) The discipline imposed would result in grave injustice; or (4) The misconduct established in the predicate matter warrants substantially different discipline in this

"(b) Upon receipt of a certified copy of the order, the court shall forthwith cause to be served upon the lawyer a copy of the order from the other jurisdiction and an order directing the lawyer to file within thirty days of service, with proof of service upon the disciplinary counsel, an answer admitting or denying the action in the other jurisdiction and setting forth, if any, reasons why commensurate action in this state would be unwarranted. Such certified copy will constitute prima facie evidence that the order of the other jurisdiction entered and that the findings contained therein are true. . . .

"(d) Notwithstanding the above, a reciprocal discipline action need not be filed if the conduct giving rise to discipline in another jurisdiction has already been the subject of a formal review by the court or Statewide Grievance Committee."

state; or (5) The reason for the original transfer to inactive disability status no longer exists."

## I

The respondent first claims that the trial court did not have the authority to suspend him for five years pursuant to Practice Book § 2-39. Specifically, the respondent argues that "the trial court only has the power to impose reciprocal discipline" and that the suspension imposed by the court was not reciprocal discipline because, "[d]espite the Virginia [board's] ruling, [he] was never suspended from the practice of law in Virginia because he was never licensed in Virginia." Although the respondent acknowledges that he did not raise this claim in the trial court, he argues that his claim implicates the trial court's subject matter jurisdiction and, therefore, can be raised for the first time on appeal. Alternatively, the respondent argues that this claim is reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015), because his "suspension implicates certain constitutional rights of the respondent who has a property interest in his right to practice law in Connecticut," and that the imposition of a five year suspension "violated his constitutional right to practice law in this state."[6] We

---

[6] The respondent also argues in passing that we should "review this claim of error under the plain error doctrine given the manifest injustice that has been caused that has constitutional significance." The respondent, however, does not set forth the standard of review for determining whether a claim satisfies the plain error doctrine or explain why the alleged error in the present case warrants reversal under that doctrine.

"[W]e will not review an underlying claim for plain error unless the request for relief under that doctrine has been adequately briefed. . . . A party claiming plain error must engage in a separate analysis under that doctrine to demonstrate that plain error has occurred under the circumstances of [the] case. . . . Indeed, a mere conclusory assertion of plain error is insufficient to allow this court to reach the merits of an unpreserved claim under that doctrine." (Internal quotation marks omitted.) *State* v. *Carlson*, 226 Conn. App. 514, 540, 318 A.3d 283, cert. denied, 350 Conn. 911, 324 A.3d 143 (2024). Because the respondent has not provided any analysis to support

first conclude that the trial court did have subject matter jurisdiction over this matter of attorney discipline brought pursuant to § 2-39. We further conclude that the respondent's claim fails under *Golding* because he has not met his burden to establish a constitutional violation.

A

We first address the respondent's claim that the court lacked subject matter jurisdiction. "[B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . Moreover, [i]t is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time." (Internal quotation marks omitted.) *Commission on Human Rights & Opportunities* v. *Travelers Indemnity Co.*, 228 Conn. App. 803, 809, 326 A.3d 557 (2024). "Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action." (Citations omitted; internal quotation marks omitted.) *Connor* v. *Statewide Grievance Committee*, 260 Conn. 435, 442–43, 797 A.2d 1081 (2002).

"[A]ttorney disciplinary proceedings are sui generis . . . [and] it is the exclusive duty of the Judicial Branch to regulate attorneys . . . . Once initiated, the court controls the situation and procedure, in its discretion, as the interests of justice may seem to it to require.

his claim that reversal is warranted under the plain error doctrine, we conclude that his claim is inadequately briefed and, therefore, decline to review it.

. . . [T]he power of the courts is left unfettered to act as situations, as they may arise, may seem to require, for efficient discipline of misconduct and the purging of the bar from the taint of unfit membership. Such statutes [and rules of practice] as ours are not restrictive of the inherent powers which reside in courts to inquire into the conduct of their own officers, and to discipline them for misconduct." (Citation omitted; internal quotation marks omitted.) *In re Cunha*, 230 Conn. App. 265, 284, 330 A.3d 181 (2025).

Moreover, Practice Book § 2-39 specifically states that, "[u]pon being informed that a lawyer admitted to the Connecticut bar has . . . been . . . disciplined . . . in another jurisdiction . . . disciplinary counsel shall obtain a certified copy of the order and file it with the Superior Court," which "shall assign the matter for a hearing." Practice Book § 2-39 (a) and (c). Section 2-39 (c) further allows the court to consider whether commensurate action is appropriate: "[T]he court shall take commensurate action unless it is found that the respondent has established by clear and convincing evidence" certain factors. Practice Book § 2-39 (c). Thus, the Superior Court has subject matter jurisdiction over attorney disciplinary proceedings, and § 2-39 plainly outlines the court's authority to hear and to determine whether discipline is appropriate for lawyers admitted in Connecticut and disciplined in another jurisdiction. Furthermore, the respondent provides no analysis to support his claim that the court lacked authority merely because he was not admitted to practice in Virginia. Accordingly, we conclude that the court had subject matter jurisdiction.

B

We next address the respondent's claim that he is entitled to *Golding* review of his unpreserved claim that the court's imposition of reciprocal discipline

against him violated his right to due process because the Virginia judgment against him amounted to a legal "nullity" since he was not licensed there. "Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Internal quotation marks omitted.) *Cohen* v. *Statewide Grievance Committee*, 189 Conn. App. 643, 658, 208 A.3d 676 (2019), aff'd, 339 Conn. 503, 261 A.3d 722 (2021). "The first two steps in the *Golding* analysis address the reviewability of the claim, [whereas] the last two steps involve the merits of the claim." (Internal quotation marks omitted.) *Lafferty* v. *Jones*, 225 Conn. App. 552, 567, 316 A.3d 742 (2024). "[W]e are free, however, to dispose of the claim by focusing on the condition that appears most relevant under the circumstances of the case." (Internal quotation marks omitted.) *State* v. *Kurzatkowski*, 119 Conn. App. 556, 564, 988 A.2d 393, cert. denied, 296 Conn. 902, 991 A.2d 1104 (2010).

Assuming, without deciding, that this claim satisfies the first two prongs of *Golding*, we conclude that the respondent cannot prevail under the third prong because he has failed to demonstrate a clearly identifiable constitutional violation that deprived him of a fair trial.

Under *Golding*, the burden falls on the respondent to establish the existence of a constitutional violation that deprived him of a fair trial. See *State* v. *Beaulieu*, 118 Conn. App. 1, 7, 982 A.2d 245 ("[d]efendants who

seek consideration of unpreserved constitutional claims [on appeal] . . . bear the burden of establishing their entitlement to such review under the guidelines enumerated in *Golding*" (internal quotation marks omitted)), cert. denied, 294 Conn. 921, 984 A.2d 68 (2009). There is no dispute in the trial court record that the respondent received notice of the presentment complaint seeking imposition of commensurate action on the basis of his suspension from the practice of law in Virginia. There also is no dispute that the trial court provided the respondent with an opportunity to be heard. A presentment hearing was conducted on March 11, 2024, and despite his failure to file a timely answer, the trial court permitted the respondent to testify and to present witnesses and evidence to show why commensurate discipline would not be appropriate in Connecticut. At the hearing, the respondent was represented by counsel. The respondent does not claim that the process for notice and hearing prescribed in Practice Book § 2-39 was not followed.

In his briefs to this court, the respondent fails to articulate any basis for his claim that his constitutional rights were violated. Instead, he focuses his argument on the nature of his property interest in his law license, correctly observing that "[a] license to practice law is a property interest that cannot be suspended without due process." *Statewide Grievance Committee* v. *Botwick*, 226 Conn. 299, 306, 627 A.2d 901 (1993). Indeed, we have long recognized that, "[b]ecause a license to practice law is a vested property interest, an attorney subject to discipline is entitled to due process of law. . . . In attorney grievance proceedings, due process mandates that [b]efore discipline may be imposed, an attorney is entitled to notice of the charges, a fair hearing and an appeal to court for a determination of whether he or she has been deprived of these rights in some substantial manner." (Internal quotation marks

omitted.) *Chief Disciplinary Counsel* v. *Burbank*, supra, 195 Conn. App. 439.

Although the respondent's property interest in his law license may be relevant to *Golding*'s second prong, the existence of such an interest alone is insufficient to satisfy *Golding*'s third prong, which requires a party to demonstrate the existence of a constitutional violation that deprived him of a fair trial. See *Cohen* v. *State-wide Grievance Committee*, supra, 189 Conn. App. 656–58 (finding plaintiff's claim that "disciplinary counsel violated her due process rights by refusing to conduct an investigation into the allegations of misconduct against her" did not amount to constitutional violation and was not reviewable under *Golding* because plaintiff provided "no analysis as to why the failure to investigate deprived her of her constitutional rights"). The respondent fails to explain how his constitutional rights were violated in this case. Rather, his claim rests on his bare and conclusory assertion that, because he was not licensed to practice law in Virginia, his suspension from the practice of law in that state was a nullity and, therefore, that the imposition of discipline under Practice Book § 2-39 in these circumstances was a constitutional violation. He fails, however, to cite to any authority, and we are aware of none, to support his contention that the imposition of reciprocal discipline pursuant to § 2-39 based on the judgment of a foreign jurisdiction suspending an attorney not licensed to practice in that jurisdiction for engaging in the unauthorized practice of law violates an attorney's right to due process.[7] Thus,

[7] We note that the respondent's argument, if accepted, would have significant practical ramifications. It would require the trial court here to conduct a de novo trial to determine whether an attorney licensed to practice in Connecticut engaged in the unauthorized practice of law in a foreign jurisdiction. This, in turn, would require the application of the law of the foreign jurisdiction to determine whether the attorney violated that state's rules regarding the unauthorized practice of law, and the production of witnesses and evidence from that foreign jurisdiction. His claim also seems to call into question our own rules of practice, which authorize the Superior Court to discipline an attorney licensed in another state who engages in the unau-

the respondent has failed to establish a constitutional violation that has deprived him of a fair trial. As a result, we conclude that the respondent's claim fails under the third prong of *Golding.*

## II

The respondent next claims that the trial court erred by suspending him for five years because he was deprived of his right to a fair trial in the Virginia proceeding and because the imposition of that penalty resulted in a "grave injustice." Specifically, the respondent argues that the imposition of a five year suspension constitutes a grave injustice because he had no prior history of discipline and that Judge Mann had a vendetta against him which deprived him of a fair trial. Although the respondent's brief is not a model of clarity, we construe his claim to be that the court erred in concluding that he failed to establish a defense pursuant to Practice Book § 2-39 (c) by clear and convincing evidence. We disagree.

Practice Book § 2-39 (c) provides in relevant part that, after a hearing in a reciprocal disciplinary proceeding, "the court shall take commensurate action unless it is found that the respondent has established by clear

---

thorized practice of law in Connecticut. Rule 5.5 of the Rules of Professional Conduct provides in relevant part: "(b) A lawyer who is not admitted to practice in this jurisdiction, shall not: (1) except as authorized by law, establish an office or other systematic and continuous presence in this jurisdiction for the practice of law; or (2) hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction. . . ." Additionally, rule 8.5 allows the discipline of attorneys not admitted in Connecticut but who engage in the practice of law here: "A lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction, regardless of where the lawyer's conduct occurs. A lawyer not admitted in this jurisdiction is also subject to the disciplinary authority of this jurisdiction if the lawyer provides or offers to provide any legal services in this jurisdiction. A lawyer may be subject to the disciplinary authority of both this jurisdiction and another jurisdiction for the same conduct." Rules of Professional Conduct 8.5 (a).

and convincing evidence that: (1) The procedure in the predicate matter was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or . . . (3) The discipline imposed would result in grave injustice . . . .”

“[C]lear and convincing proof denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist. . . . Our Supreme Court has stated that the clear and convincing standard is a demanding standard that should operate as a weighty caution upon the minds of all judges, and it forbids relief whenever the evidence is loose, equivocal or contradictory.” (Internal quotation marks omitted.) *Chief Disciplinary Counsel* v. *Burbank*, supra, 195 Conn. App. 431. “Because whether a respondent has established a defense to a disciplinary order by clear and convincing evidence presents a question of fact for the trier, it follows that our review of a court’s finding that a respondent has failed to meet that high burden of persuasion is limited to whether that finding is clearly erroneous.” Id., 432. “Under this highly deferential standard, [w]e do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported. . . . A finding of fact is clearly erroneous when there is no evidence to support it . . . or when although there is evidence in the record to support it, the

reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Id.

The respondent first argues that the imposition of a five year suspension for misconduct "that was anything but egregious" and in light of his thirty-eight years of practice with no history of disciplinary sanctions would result in a grave injustice.

As discussed previously, pursuant to Practice Book § 2-39 (b), the certified copy of the Virginia order of suspension served as prima facie evidence that the respondent engaged in the unauthorized practice of law when he appeared in the Fairfax County Circuit Court and that he engaged in misconduct that reflected on his fitness to practice law. Specifically, the board found that the respondent appeared for a client and argued procedural matters and facts in the case of *Lalich* v. *Lewis* without informing the court that he was not admitted to practice law in Virginia. The order of suspension further indicated that the respondent engaged in misconduct during the investigation and hearings in the Virginia disciplinary proceedings. At the presentment hearing in Connecticut, the respondent testified that he had no disciplinary history for the thirty-eight years he has been admitted to practice in Connecticut, which the petitioner did not dispute.

It was the respondent's burden to show by clear and convincing evidence that the imposition of commensurate discipline in Connecticut would result in a grave injustice. Although it is true that lack of prior discipline can be considered as a mitigating factor in the determination of sanctions for attorney disciplinary proceedings,[8] that single mitigating factor does not persuade

---

[8] See *Disciplinary Counsel* v. *Serafinowicz*, 160 Conn. App. 92, 99–100, 123 A.3d 1279 ("Connecticut courts reviewing attorney misconduct, therefore, have consulted the American Bar Association's Standards for Imposing Lawyer Sanctions [ABA standards] . . . . Although the [ABA] standards have not been officially adopted in Connecticut, they are used frequently

us that the court's finding that the respondent failed to meet his burden of demonstrating by clear and convincing evidence that a grave injustice would occur if commensurate discipline was imposed was clearly erroneous.

The respondent also argues that the court "should have considered the evidence that Judge Mann . . . had a vendetta [against] the respondent, was acting out of anger and vindictiveness, and not to protect the public." Under Practice Book § 2-39 (c) (1), if proven by clear and convincing evidence, the failure to receive a fair hearing and due process in the Virginia proceeding would be a defense to the imposition of commensurate discipline.[9]

The board's order of suspension, however, indicates that the respondent had adequate notice of the charges against him and a fair hearing. The order of discipline reflects that, over the course of the two day Virginia proceeding, the respondent was able to present evidence, testify, and object to exhibits, and that when more time was needed for the hearing it was continued for a second day. The order also shows that the board took extraordinary efforts to ensure that the respondent could present his witnesses.

by the Superior Court in evaluating attorney misconduct and in determining discipline . . . . [A]fter a finding of misconduct, a court should consider: (1) the nature of the duty violated; (2) the attorney's mental state; (3) the potential or actual injury stemming from the attorney's misconduct; and (4) the existence of aggravating or mitigation factors. . . . The mitigation factors include: (a) absence of a prior disciplinary record . . . ." (Citations omitted; internal quotation marks omitted.)), cert. denied, 319 Conn. 953, 125 A.3d 531 (2015).

[9] See *Chief Disciplinary Counsel* v. *Burbank*, supra, 195 Conn. App. 439 ("if proven by clear and convincing evidence, the failure to receive due process in a disciplinary proceeding in another jurisdiction certainly would be a proper defense to the imposition of reciprocal discipline in Connecticut"). In his brief the respondent seems to argue his denial of a fair hearing under the grave injustice provision of Practice Book § 2-39 (c) (3), although § 2-39 (c) (1) specifically allows for such an attack on the predicate matter.

At the presentment proceeding in Connecticut, the only evidence the respondent offered was his own testimony, in which he claimed that Judge Mann was acting out a vendetta against him and that the board "went along with [Judge Mann's] complaint" because he was appointed to the Virginia Supreme Court." The respondent presented no evidence in the trial court that Judge Mann was involved in the grievance matter beyond the filing of the complaint, nor did he provide any evidence other than his own testimony that he was deprived of due process in the proceeding. Thus, on the basis of the record, we are unpersuaded that the trial court clearly erred in finding that the respondent failed to demonstrate by clear and convincing evidence that the Virginia proceedings were so lacking in notice or opportunity to be heard that it would constitute a grave injustice to impose commensurate discipline in Connecticut.

## III

The respondent's final claim is that the trial court abused its discretion by imposing a five year suspension in Connecticut because the suspension is excessive when compared to the sanctions imposed in other cases that, he contends, involved more egregious conduct, and because he poses no risk to the public. We conclude that the court's imposition of a five year suspension was not an abuse of its discretion and falls within the discipline warranted under Practice Book § 2-39.

"In attorney grievance cases, in the absence of mandatory statutory sanctions, a reviewing court must defer to the discretion of the fact finder, whether it be the trial court or the committee, because the fact finder is in the best position to evaluate the evidence and the demeanor of the parties. . . . Accordingly, once a trial court has found by clear and convincing evidence that an attorney has engaged in professional misconduct, the court has the inherent judicial power, derived from

judicial responsibility for the administration of justice, to exercise sound discretion to determine what sanction to impose in light of the entire record before it. . . . It is not for an appellate court to decide whether, under the circumstances of a particular case, it would have imposed a harsher sanction on the defendant. . . . Rather, our inquiry is limited to whether the trial court abused its discretion in imposing [the sanction that it did]. The scope of review by this court on a claim that the trial court abused its discretion is well settled. [E]very reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *Disciplinary Counsel* v. *Parnoff*, 158 Conn. App. 454, 480–81, 119 A.3d 621 (2015), aff'd, 324 Conn. 505, 152 A.3d 1222 (2016).

"Abuse of discretion is synonymous with a failure to exercise a sound, reasonable, and legal discretion. It is a strict legal term indicating that [an] appellate court is of [the] opinion that there was [the] commission of an error of law by the trial court. . . . A discretion exercised to an end or purpose not justified by and clearly against reason and evidence. Unreasonable departure from considered precedents and settled judicial custom, constituting error of law. . . . A judgment or decision by an administrative agency or judge which has no foundation in fact or in law. *Abuse of discretion by [a] trial court is any unreasonable, unconscionable and arbitrary action taken without proper consideration of facts and law pertaining to [the] matter submitted.*" (Emphasis in original; internal quotation marks omitted.) *Statewide Grievance Committee* v. *Glass*, 46 Conn. App. 472, 479–80, 699 A.2d 1058 (1997).

"A court disciplining an attorney does so not to punish the attorney, but rather to safeguard the administration of justice and to protect the public from the misconduct or unfitness of those who are members of the legal profession. . . . Inherent in this process is a large degree of judicial discretion. . . . A court is free to determine in each case, as may seem best in light of the entire record before it, whether a sanction is appropriate and, if so, what that sanction should be. . . . Accordingly, a court may accomplish the goal of protecting the public and the courts by imposing a sanction that deters other attorneys from engaging in similar misconduct." (Citations omitted.) *Statewide Grievance Committee* v. *Fountain*, 56 Conn. App. 375, 378, 743 A.2d 647 (2000).

Under Practice Book § 2-39, unless the respondent established by clear and convincing evidence one of the factors in § 2-39 (c), commensurate discipline is warranted. See *In re Weissman*, 203 Conn. 380, 384, 524 A.2d 1141 (1987) ("[A] lawyer who offers a defense to the disciplinary order of the other jurisdiction is obligated to prove such a defense by clear and convincing evidence. In the absence of such a rebuttal of the disciplinary order of the other jurisdiction, the trial court in this state must, after a hearing, impose commensurate action." (Internal quotation marks omitted.)). We recognize that commensurate action does not necessarily require identical discipline. See *Chief Disciplinary Counsel* v. *Burbank*, supra, 195 Conn. App. 433 n.13 ("[C]ommensurate action under . . . [§ 2-39] (c) does not mean identical action. The trial court ha[s] inherent judicial power, derived from judicial responsibility for the administration of justice, to exercise sound discretion to determine what sanction to impose in light of the entire record before it." (Internal quotation marks omitted.)). We also note that presentment actions brought pursuant to § 2-39 are not trials

de novo where a judge is tasked with the initial review of the misconduct in the foreign jurisdiction. Rather, § 2-39 instructs a trial court to impose commensurate discipline, based upon findings made in a foreign jurisdiction, unless a respondent proves by clear and convincing evidence that one of the enumerated exceptions applies.

Here, the record reveals that, pursuant to Practice Book § 2-39, the court heard evidence and argument from the respondent during the presentment hearing in support of his claim that commensurate discipline was unwarranted. The only evidence the respondent offered at that hearing was his own testimony. On the basis of the record before it, the court found that the respondent failed to prove by clear and convincing evidence any of the enumerated grounds for deviating from commensurate discipline under § 2-39.

In his briefs to this court, the respondent cites to several cases, none of which involved the imposition of reciprocal discipline under Practice Book § 2-39, in which attorneys received less severe sanctions for what he argues constituted more egregious conduct than his own.[10] We have reviewed those cases and agree with

---

[10] In his brief the respondent cites the following cases in support of his claim that the five year suspension was an abuse of the trial court's discretion: *Statewide Grievance Committee* v. *Shluger*, 230 Conn. 668, 680–81, 646 A.2d 781 (1994) (finding suspension of attorney from practice of law for three years for intentionally understating his taxable income was not abuse of discretion because of "serious and repeated nature of the defendant's misconduct" and because it was misconduct that "involves fraud, deceit and dishonesty" which "bears directly on [an attorney's] fitness to practice law"); *Statewide Grievance Committee* v. *Fountain*, supra, 56 Conn. App. 377–83 (finding trial court's imposition of three month suspension on attorney who forged signature of affiant and then notarized affidavit, after weighing aggravating and mitigating factors, was not abuse of discretion); *Office of Chief Disciplinary Counsel* v. *Spears*, Superior Court, judicial district of Hartford, Docket No. CV-22-6160733-S (September 25, 2023) (suspending attorney for two years after finding he violated Rules of Professional Conduct through his false and defamatory allegations against judges, prosecutors, and Glastonbury Police Department). The respondent also cites to *Office of Chief Disciplinary Counsel* v. *Miller*, 335 Conn. 474, 239 A.3d

the petitioner that the respondent's comparison of "his situation to other cases without examining all the relevant criteria is insufficient" to establish that the court abused its discretion. "[T]he imposition of sanctions should be individualized and tailored to the facts of the particular case." *Disciplinary Counsel* v. *Serafinowicz*, 160 Conn. App. 92, 102, 123 A.3d 1279, cert. denied, 319 Conn. 953, 125 A.3d 531 (2015).

Here, the prima facie evidence from the Virginia suspension order reflects findings that the respondent engaged in the unauthorized practice of law and engaged in conduct implicating his honesty and fitness to practice law by virtue of his appearance and representations in front of Judge Mann at the Fairfax County Circuit Court. The suspension order also reflects the existence of several aggravating factors that were considered by the board when it imposed the five year suspension, including the respondent's bad faith obstruction of the disciplinary proceedings and failure to recognize the wrongful nature of his actions. Because the respondent has not met his burden of demonstrating that the trial court acted arbitrarily by ordering a suspension commensurate with the one imposed by the board, and on the basis of our review of the record that was before the court, we conclude that the court did not abuse its discretion by imposing discipline commensurate with the discipline imposed in Virginia.

The judgment is affirmed.

In this opinion the other judges concurred.

---

288 (2020), which affirmed a trial court decision that imposed a one year suspension on an attorney who, among other things, was found to have violated the Rules of Professional Conduct by depositing personal funds into her IOLTA account, by engaging in conduct prejudicial to the administration of justice, and by engaging in the unauthorized practice of law. Id., 477–79. *Miller*, notably, was not appealed on the ground that the one year suspension constituted an abuse of the trial court's discretion; rather, the respondent in that case claimed that the trial court erred in concluding that she had engaged in misconduct. Id., 475.